IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THEODORA WESTON | )<br>)<br>) |
| Plaintiff, | ) |
| v. | )<br>) |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, Michael Saddler, Secretary and H.V. BAKARE, caseworker, MS. WITHSRSPOON, her supervisor, in their individual and official capacities, and ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES Division of Child Support Enforcement, Therea Eagleson, Secretary and UNITED STATES OF AMERICA, and BRENDAN KELLY, State Attorney for St. Clair County, Illinois | )<br>)<br>)<br>)<br>)<br>)   11 C 8792<br>)<br>)   Judge Virginia M. Kendall<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. Background**

This matter is before the Court on Plaintiff's Motion to Reconsider. (Doc. 8). Plaintiff Theodora Weston brought a *pro se* suit in this Court against Michelle Saddler, H.V. Bakare, Therea Eagleson, Brendan Kelly, someone identified only as Ms. Witherspoon, the Illinois Department of Family Services, and the United States of America. (Doc. 1) The Court found that all of Weston's claims, as alleged, failed as a matter of law. (Doc. 6; Order of December 19, 2011). The Court therefore dismissed Weston's case. (*Id.*) The Court also denied Weston's Motion to Proceed *In Forma Pauperis*. (*Id.*) Weston moves this Court to reconsider it prior ruling, or in the alternative, grant here leave to amend her Complaint. For the reasons stated below, Westons's Motion for Reconsideration is denied. In addition, construing her Motion as one to amend, that too is denied

1

because any amendment to her Complaint would be futile.

## II. Motion to Reconsider Under Rule 59(e) or Rule 60(b)

Weston titles her new filing as a Motion to Reconsider. Under the Federal Rules of Civil Procedure a "Motion to Reconsider" does not exist. *See Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994); *GHSC Assocs. Ltd. P'ship. v. Wal-Mart Stores,* 29 Fed. Appx. 382, 384 (7th Cir. 2002). Thus, a motion that seeks to challenge the merits of a ruling by a district court will automatically be considered as having been filed under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *See Id.* Whether to characterize a motion as arising under Rule 59(e) or 60(b) depends on the nature of the motion. *See Obriecht v. Raemisch,* 517 F.3d 489, 493 (7th Cir. 2008) ("...it is the substance, rather than the form, of a post-judgment motion that determines the rule under which it should be analyzed."

A motion filed under Rule 59(e) is one to alter or amend a judgment. Fed. R. Civ. P. 59(e). "A motion to alter or amend a judgment under Rule 59(e) may be granted to correct a manifest error of law or fact." *Duran v. Town of Cicero*, 653 F.3d 632, 642 (7th Cir. 2011), citing *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). On the other hand, Rule 60(b) provides that "[o]n a motion and just terms, the court may relieve a party...from a final judgment, order, or proceeding for...mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rule 60(b) is an extraordinary remedy "designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law." *Eskridge v. Cook County*, 577 F.3d 806, 809 (7th Cir. 2009). Rule 60(b) motions are not vehicles to correct legal errors made by the district court. *See Marques v. Federal Reserve Bank of Chicago*, 286 F.3d 1014, 1017-18 (7th Cir. 2002) ("A legal error by the district court is not one of the specified grounds for [] a [Rule 60(b)]

motion. In fact it is a forbidden ground.") (internal citations omitted).

Weston's Motion does not fall into either Rule 59(e) or Rule 60(b). Weston does not contend–nor could she–that the Court committed a manifest error of law or fact in deciding her Complaint. Similarly, she does not contend that the Court should alter its prior judgment due to mistake, inadvertence, surprise, or excusable neglect. Weston claims that the Court incorrectly "concluded that, in order to proceed *in forma pauperis*, it must be proven, not stated, that a claim has relief that may be granted." This is not a proper ground for reconsideration under either 59(e) or 60(b). Furthermore, the Court did not hold that in order to proceed *in forma pauperis*, it must be proven that a claim has relief that may be granted. Rather, the Court analyzed Weston's Complaint under 28 U.S.C. § 1915(e)(2), as it is authorized and required to do by Congress. The statute provides that "the court *shall* dismiss the case at any time if the court determines that...the action...is frivolous...fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) (emphasis supplied). When performing this analysis courts apply the same standard that they apply when considering a motion to dismiss under Rule 12(b)(6). *See Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). The Court thoroughly reviewed and gave due consideration to each of the claims asserted by Weston in her Complaint. The Court concluded that all of these claims failed as a matter of law. Therefore, Weston's Motion to Reconsider, to the extent that it falls under either Rule 59(e) or 60(b), is denied.

### III. Motion to Amend Under Rule 15(a)

Putting aside the language that Weston uses to frame her Motion, it is not really a motion to reconsider at all. Rather, the Court construes Weston's Motion as one to amend her Complaint,

3

presumably under Rule 15. *See* Fed. R. Civ. P. 15(a). Weston says that "given an opportunity to amend, [she] can state and later prove that the United States of America can be held accountable to the procedural and substantive requirements of due process by virtue of the Bill of Rights." She claims that "the federal government may not be reachable via the Fourteenth Amendment, but it surely can be reached by virtue of the Fifth Amendment..." Weston therefore claims that she "should be allowed to amend the petition against the United States of America on the basis of the taking of private property without just compensation..." What Weston essentially seeks is to amend her Complaint to include a claim arising under the Fifth Amendment to the United States Constitution. More precisely, she seeks to replead Count II of her Complaint to proceed upon the Fifth Amendment, rather than the Fourteenth Amendment, as she did initially.

"Although leave to amend should be freely given...that does not mean it must always be given. District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. Ill. 2009), citing *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (internal quotations omitted). Denying an amendment on futility grounds is the functional equivalent of allowing for the proposed amendment and then dismissing it under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Townsel v. DISH Network L.L.C.,* 668 F.3d 967, 969 (7th Cir. 2012). Futility exists where an amended complaint would not survive a motion to dismiss. *See Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 823 (7th Cir. 2011); *London v. RBS Citizens, N.A.*, 600 F.3d 742, 747 n.5 (7th Cir. 2010). To withstand a motion to dismiss, Weston must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

From the facts alleged in Weston's Complaint the Court is at pains to see how the federal government is involved in her case for purposes of a Fifth Amendment takings claim. Weston alleges that The Illinois Department of Healthcare and Human Services failed to collect child support payments due to her for roughly twenty years. After waiting over twenty years for the Department to collect child support payments that were by then in arrears, Weston decided to initiate a petition against her ex-husband for the overdue payments. For reasons that she does not explain, she never went through with the petition. According to Weston, sometime in 2010 she called Brendan Kelly, the Illinois State's Attorney for St. Clair County, and he allegedly told her that "the FEDS" had instructed him not to collect on the child support payment and "to reduce arrearages to zero." Notably, this is the only time that the federal government appears anywhere in Weston's Complaint–that is, the hearsay comment allegedly made by Kelly, the State's top law enforcement official for St. Clair County, is the sole basis for Weston's claim that the federal government has played any role in her efforts to obtain child support payments. According to Weston, this call with Kelly resulted in the State bringing some sort of action against her ex-husband–Weston does not say what the action was for, what court it was in, etc. But apparently it resulted in a court order on November 21, 2011, in which the State obtained a judgment against the ex-husband. Weston does not supply the Court with this alleged order, and the Court–having undertaken an independent investigation to discover it–has been unable to locate it.

In spite of her obligation to set forth clear and concise claims pursuant to Rule 8 of the Federal Rules of Civil Procedure, Weston's Complaint is unclear and not an easy one to understand. Among the claims made in Count II are "that the respondent, Il. Dept. of Healthcare & Family

5

Services is a state agency responsible for the prosecution of child support obligations along with respondent, Brendan Kelly, St. Clair County, Il. State's Attorney and an unknown branch of the United States of America as a respondent." Weston alleges that "during the 1990's, [she] registered her 1987 Dissolution of Marriage Decree with the non-afdc division of child support enforcement @ $500 monthly for two minors." She claims that "from 1990 to the present, the respondents have failed to collect any child support whatsoever from [her] ex-husband." She claims "that after twenty years of not collecting child support, respondent, Il. Dept. of Healthcare and Human Services, notified [her] that it will not enforce her child support order because the children are now over the age of eighteen years." According to Weston, "during 2010, [she], via the St. Clair County State Attorney's office and later, Brendan Kelly, initiated a petition for entry of judgment against [her] ex-husband, but never finalized said petition nor collected any monies." Furthermore, Weston claims that she "contacted the downstate office of the respondent and was informed by Brendan Kelly that 'the FEDS had told them not to collect on the child support and to reduce arrearages to zero'; said conversation culminating in a court order entered November 21, 2011, in which the State entered a judgment against [her] ex-husband on its own behalf for more than $38,000, but nothing on behalf of [Weston], whose arrearages totaled more than $197,000."

Amending her Complaint would be futile because Weston's Complaint and all of her claims do not belong in federal court. First, this case is within the "domestic relations" exception to federal jurisdiction. *See Ankenbrandt v. Richards,* 504 U.S. 689, 715 (1992) (federal courts lack jurisdiction over actions seeking "divorce, alimony, and child custody"); *Elk Grove Unified School Dist. V. Newdow*, 542 U.S. 1, 12 (2004). Federal courts have long declined to exercise jurisdiction over issues related to divorce and child support, as "the whole subject of the domestic relations of

6

husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Newdow*, 542 U.S. at 12, quoting *In re Burrus*, 136 U.S. 586, 593-594 (1890); *see also Barber v. Barber,* 62 U.S. (21 How.) 582, 584 (1858) ("we disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony."). The Seventh Circuit held that *Ankenbrandt* "re-affirmed the longstanding rule that domestic disputes involving divorce, custody or alimony issues are the province of state courts and emphasized that this rule was a limitation on federal jurisdiction." *Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995); *see also Jones v. Brennan*, 465 F.3d 304 (7th Cir. 2006) (emphasizing that the "domestic relations" exception to federal jurisdiction applies equally to diversity cases as it does to cases invoking a federal question); *see also Lloyd v. Loeffler*, 694 F.2d 489, 492 (7th Cir.1982) ("The typical divorce decree provides for...child support payments...[C]hild support...often entail[s] continuing judicial supervision... The federal courts are not well suited to this task...When a case must begin in state court, as a divorce or custody case must, retention of any ancillary litigation...is within the exclusive jurisdiction of the state courts."). This Court therefore lacks jurisdiction to determine whether Weston has properly received her child support payments. Weston's right to child support payments flows from her divorce decree. The enforcement of any child support payments that may be due to her is the province of state courts and agencies.

Additionally, leave to amend would be futile because Weston's Complaint is barred by the statute of limitations. The statute of limitations in Illinois for a claim arising under 42 U.S.C. § 1983, as Weston's purports to, is two years. *See Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). This means that Weston's claims must have accrued within two years of filing of the Complaint–which means after December 12, 2009. According to Weston's allegations, the actors

responsible for withholding her child support have been doing so for over twenty years. The claims accrued when Weston knew, or should reasonably have known, that her constitutional rights were being violated. *See Id.* Any argument that this was a continuing violation or an ongoing conspiracy–which may toll the statute of limitations–must be soundly rejected. *See Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996). A continuing violation requires the plaintiff to demonstrate that because of the continuing nature of the acts alleged, no cause of action accrued until a pattern of behavior became established because no cause of action would have accrued upon the first few instances of the inappropriate action. *See Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996); *Selan v. Kiley*, 969 F.2d 560, 565-66 (7th Cir. 1992). That is, a continuing violation requires a pattern of activity that alerts the plaintiff to a cause of action over a duration of time, rather than at the time of each discrete act. From the claims alleged in Weston's Complaint it is clear that she became aware of the conduct which she complains of as early as 1990–the time that she claims the respondents failed to collect any child support from her ex-husband. A cause of action for a civil conspiracy–which from the allegations it appears Weston believes this was–does not accrue at the time of the last act in furtherance of the conspiracy, but rather at the time the plaintiff "becomes aware that [she] is suffering from a wrong for which damages may be recovered in a civil action." *Scherer v. Balkema*, 840 F.2d 437, 439-440 (7th Cir. 1988). If Weston believed that the allegations in the Complaint amounted to unconstitutional activity under Section 1983–which this Court has painstakingly established did not–she must have brought it to the attention of a court within two years of the first occurrence.

In her initial Complaint, Weston claimed that the State of Illinois, St. Clair County State's

Attorney Brendan Kelly, and the United States of America violated the Fourteenth Amendment to the United States Constitution. She claimed that the State, Kelly, and the United States interfered with her legitimate property interest in child support payments and basic civil rights such that they had a duty to compensate her. She further claimed "that the State of Illinois and the Federal Government have violated substantive due process in the economic sphere by eliminating her $197,000 in back child support; and by never ever having intended to collect [her] child support." She alleged "that as a direct and proximate cause of the respondents' intentional refusal to enforce her child support order, [she] has suffered extreme emotional distress, loss of property, loss of civil rights, along with approximately One Hundred and Ninety Seven Thousand Dollars ($197,000) in back child support." She also claimed that she is entitled to no less than $500,000.00 in punitive damages.

The Court originally ruled that:

> [T]here is no Fourteenth Amendment right to child support payments that any of the named entities could violate. Furthermore, Illinois is immune from liability by virtue of the Eleventh Amendment and Brendan Kelly enjoys prosecutorial immunity from suit alleging a constitutional violation. *See Hans v. Louisiana,* 134 U.S. 1 (1890); *Imbler v. Pachtman,* 424 U.S. 409 (1976). Finally, Weston has pled the United States out of the case because the Fourteenth Amendment does not apply to the United States.

(Doc. 6; Order of December 19, 2011, Page 2).

Any amendment of Weston's Complaint is also futile because she does not have a property interest in the child support payments that is protected by the Takings Clause of the Fifth Amendment, and therefore the claim that the United States took her property without just compensation cannot stand. The Fifth Amendment to the United States Constitution provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const.,

9

Amdt. V. The Clause restricts the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). For a Takings Clause claim to lie, the petitioner must have a "property interest" in that which they claim the government has confiscated from them. *See Muscarello v. Ogle County Bd. of Comm'rs*, 610 F.3d 416, 423 (7th Cir. 2010), citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978). "The 'private property' upon which the Clause traditionally has focused is a specific interest in physical or intellectual property." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 554 (1998) (Breyer, J., dissenting). The concept, however, extends beyond mere physical or tangible property, and has been held to include trade secrets protected under state law, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984), rights of access to property, *e.g.*, *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980), *Kaiser Aetna v. United States*, 444 U.S. 164 (1979), rights to affix cables on structures, Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 441 (1982), and the economically beneficial use of property, *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). However, the protections of the Fifth Amendment do not extend to "mere unilateral expectations" of economic benefits. *See Webb's Fabulous Pharms. v. Beckwith,* 449 U.S. 155, 161 (1980). Thus, the right to social service benefits, *Flemming v. Nestor*, 363 U.S. 603, 608-611 (1960), future pension benefits, *United States v. Willow River Power Co.*, 324 U.S. 499 (1945), and welfare benefits, *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970), are not protected as "property" within the meaning of the Clause. But whatever the "property interest" in question, the State must *take it* for a Takings Clause action to exist, and the State must transfer the property either to itself or to a private party by virtue of its eminent domain power. *See Kelo v. City of New London,* 545 U.S. 469, 484 (2005).

Courts must rely on an ad hoc, factual inquiry to determine whether a taking arises in a particular case. *See Connolly v. Pension Benefit Guaranty Corporation,* 475 U.S. 211, 224 (1986). The Supreme Court has identified three factors that are applied as guideposts in determining whether state action has affected a taking. These are: (1) "the economic impact of the regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the governmental action." *See Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978). As the Court in *Bowen v. Gilliard*, 483 U.S. 587, 607 (U.S. 1987), instructed, in applying the first factor it is critical to remember that the economic impact in question when considering child support payments is the impact on the child. Here the relevant children have reached the age of majority without the aid of any child support that may have been due to them in the past. It is Weston who is seeking the arrearages–and she is not the primary beneficiary of child support payments. This is not a case about past-due spousal maintenance. Therefore, the first factor weighs against finding that Weston has a property interest subject to a taking in child support payments. *Accord Bowen*, 483 U.S. at 607. In applying the second factor, the Court noted that "the child receiving support payments holds no vested protectable expectation that his or her parent will continue to receive identical support payments on the child's behalf, and that the child will enjoy the same rights with respect to them." *Bowen,* 483 U.S. at 607. Under Illinois law, support obligations are always subject to modification by law. *See In re Marriage of Petersen*, 955 N.E.2d 1131, 1134 (Ill. 2011) ("The Act also recognizes that because circumstances do not always remain the same as they were on the date a judgment of dissolution is entered, modifications may be necessary. 750 ILCS 5/510."). Support may be modified by courts, legislatures, and even Congress. *See Bowen,* 483 U.S. at 607. Thus, the second factor militates

11

heavily against Weston. Third, there has been no government action here. That may be one of Weston's complaints, but it is up to her–perhaps with the aid of Illinois's courts and agencies–to enforce any child support obligations that are supposedly due to her. This is certainly not a case in which a minority of people are being forced to bear a financial responsibility that ought to be born by the public at large. *See Bowen,* 483 U.S. at 607, citing *Armstrong*, 364 U.S. at 49 . Therefore, no property interest exists in child support payments and as a result the Takings Clause is not triggered. *See generally Bowen* , 483 U.S. at 607; *accord Johnson v. Cohen,* 836 F.2d 798, 807 (3d Cir. 1987) ("As we have noted above, the Supreme Court conclusively decided that no property interest existed in the child support payments, and thus that the protections of the takings clause were not triggered.").

To the extent property of Weston's–in this case a right to child support payments–was taken from her, it was taken either by her ex-husband, via his refusal to make the payments–or by the State of Illinois, when it refused to enforce the support decree, or obtained a judgment against the husband and thereby improperly obtained rights to the ex-husband's property ahead of Weston's rights. As the private citizen husband and the State of Illinois are the parties responsible for paying Weston, it is these parties with whom she would have privity of suit. To the extent the State of Illinois received any direction from the federal government, it is the State of Illinois's burden to raise this alleged direction as a cross-claim for contribution for any amounts it is found to owe to Weston.

### IV. Conclusion

Weston's Motion for Reconsideration and to Proceed *In Forma Pauperis* is denied. Her Motion, construed as one to amend her Complaint, is also denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 16, 2012